## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

DAWN M,[1]

      Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

Case No. 3:24-cv-02

Bowman, M.J.

### MEMORANDUM OPINION AND ORDER

Plaintiff Dawn M. filed this Social Security appeal to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. § 405(g). Proceeding through counsel, Plaintiff presents three claims of error for this Court's review. Defendant filed a response in opposition[2] to which Plaintiff filed a reply. Based on new argument presented in Plaintiff's reply, the Court permitted Defendant to file a sur-reply. For the reasons that follow, the Court AFFIRMS the Commissioner's conclusion that Plaintiff is not disabled.

### I. Summary of Administrative Record

The administrative record in this case is of unusual length, exceeding four thousand pages. That length is due in part to extensive medical records that encompass a complex history dating back to the alleged onset of disability on November 12, 2013, and in part because the record includes two prior judicial appeals.

---

[1]Because of significant privacy concerns in social security cases, the Court refers to claimants only by their first names and last initials. *See* General Order 22-01.

[2]Regrettably, defense counsel cites solely to PageID numbers rather than to the Administrative Transcript. Because PageID citations cannot be easily searched in Social Security cases, Local Rule 8.1(d) <u>requires</u> parties in Social Security cases to "provide pinpoint citations to the administrative record, regardless of whether a party also chooses to provide PageID citations." **Counsel is strongly encouraged to comply with LR 8.1(d) in the future, using "Tr." or "R." to cite to the Administrative Transcript.**

1

Plaintiff first applied for disability benefits under both Titles II and XVI of the Social Security Act in May 2015. (Tr. 266-273). In her original application, she alleged the inability to work due to anxiety, panic attacks and an inability to comprehend things, secondary to a brain aneurism that appeared to occur in November 2013. After her applications were denied initially and upon reconsideration, she filed a request for a hearing. Following Plaintiff's first hearing in 2017, Administrative Law Judge ("ALJ") Deborah Sanders issued an adverse written decision concluding that Plaintiff was not disabled. (Tr. 12-40). The Appeals Council denied further review, leaving ALJ Sanders' April 4, 2018 decision as the final decision of the Commissioner. Through counsel, Plaintiff filed her first judicial appeal in this Court. *See Dawn M. v. Comm'r of Soc. Sec.*, Case No. 3:19-cv-10-MJN. Prior to the completion of briefing, the parties filed a joint stipulation to remand for further review under sentence four of 42 U.S.C. § 406(g). The Court accepted the parties' stipulation and remanded. (Tr. 1730-1734, 7/17/19 Order).

On remand, the case was reassigned to ALJ Stuart Adkins, who held a new evidentiary hearing on February 5, 2020. (Tr. 1657-1695). In April 2020, the ALJ issued a written decision that again concluded that Plaintiff was not disabled. (Tr. 1620-1646).[3] Plaintiff filed a second appeal in this Court. *See Dawn M. V. Comm'r of Soc. Sec.*, No. 3:20-cv-258-NMK. On June 7, 2022, this Court again remanded for further review under sentence four based on the ALJ's failure to "properly explain" his decision to limit Plaintiff to "occasional interaction with supervisors and coworkers" with "no interaction with the general public" in lieu of adopting consulting psychological opinions that limited Plaintiff to "superficial interactions." (Tr. 3153-55).

---

[3]A duplicate copy of the ALJ's 2020 decision is included in the administrative record at Tr. 3097-3141.

Following remand, ALJ Adkins held a third hearing on March 20, 2023 at which Plaintiff again appeared and gave testimony, along with a new vocational expert. In her most recent application, Plaintiff alleged disability based on "anxiety, panic attacks, memory loss and confusion, depression, an irrational fear of being alone or driving alone, fibromyalgia, migraines, and obesity." (Tr. 3033). On September 14, 2023, ALJ Adkins issued a forty-page adverse written decision. (Tr. 3021-3061). However, rather than being signed by ALJ Adkins directly, the lengthy decision was signed by "Gregory Kenyon on behalf of Stuart Adkins." (Tr. 3061). The Appeals Council again denied further review, leaving the September 2023 decision as the final decision of the Commissioner. Plaintiff then timely filed this third judicial appeal.

Plaintiff was 37 years old on the date of her alleged onset of disability, defined as a younger individual age 18-44. She had changed age category by the date of the last adverse decision, but remained in the "younger individual age 45-49" category. (Tr. 3059). Plaintiff has not engaged in substantial gainful activity since her alleged onset date of November 12, 2013. (Tr. 3028). Based on her earnings history, her date last insured for purposes of DIB was March 31, 2017.[4] (*Id*.)

The ALJ determined that Plaintiff has the following severe impairments: "fibromyalgia, degenerative joint disease, arthritis, lumbar degenerative disc disease, drop foot, migraines, an aneurysm, a Chiari malformation, GERD, asthma, obstructive sleep apnea, restless leg syndrome, hypertension, obesity, anxiety, and an affective disorder." (Tr. 3028). Considering Plaintiff's impairments individually and in combination, the ALJ determined that none meet or medically equal "the severity of one of the listed

---

[4]In order to qualify for DIB, Plaintiff must show that she became disabled prior to March 31, 2017. If determined to be disabled after that date, she would be entitled only to SSI benefits.

impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.*) The ALJ next determined that Plaintiff's RFC would allow her to perform sedentary work, with lifting and/or carrying ten pounds occasionally and less than ten pounds frequently, subject to the following additional limitations:

> She is able to stand and/or walk for about two hours and sit for about six hours in an eight-hour workday. She is able to frequently push and/or pull with the right lower extremity. She is limited to no climbing of ladders, ropes, and scaffolds with occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs. She is limited to occasional exposure to loud noises, dusts, fumes, odors, and pulmonary irritants, and she should avoid unprotected heights, dangerous machinery, and commercial driving. She is able to perform simple, routine tasks but not at a production-rate pace and without strict performance quotas. She is limited to superficial contact with coworkers and supervisors with "superficial contact" defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as lacking the ability to engage in more complex social interactions such as persuading other people or rendering advice. She is limited to no interaction with the general public and no jobs involving teamwork or tandem tasks. She can tolerate occasional changes to a routine work setting defined as one to two per week where those changes are explained in advance and implemented gradually.

(Tr. 3032-3033).

Plaintiff has a high school education and past relevant semi-skilled work as a home attendant and a telephone solicitor. (Tr. 3059). There is no dispute that Plaintiff's impairments preclude her from performing her past relevant work. But based on the RFC as determined and testimony from the VE, the ALJ determined she still could perform other jobs that exist in significant numbers in the national economy, including the representative occupations of addresser, document preparer, and tube operator. (Tr. 3060). In all, the ALJ found there are approximately 80,000 to 100,000 jobs that an individual with Plaintiff's limitations could perform. Therefore, the ALJ determined that Plaintiff was not under a disability through the date of his last decision. (*Id.*)

In this third judicial appeal, Plaintiff seeks reversal for the following reasons: (1) because the administrative record does not contain the requisite written authorization for Gregory Kenyon to have signed the decision "on behalf of" ALJ Stuart Adkins; (2) because the ALJ's most recent written decision fails to comply with this Court's prior remand order; and (3) because the ALJ failed to account for prior VE testimony that implies that "supervisor criticism" exceeds "superficial contact." For the reasons that follow, the Court finds no reversible error.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also

exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted). *See also Biestek v. Berryhill*, 139 S. Ct.1148, 1154 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an

impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

### B. Plaintiff's Claims

### 1. The Lack of Written Authorization for the Signatory ALJ

Plaintiff's first claim is based on procedural noncompliance with the Hearings, Appeals and Litigation Law manual ("HALLEX"). The written decision at issue states on its face that it was signed by ALJ Gregory Kenyon "on behalf of" the assigned ALJ, Stuart Adkins. Pursuant to HALLEX 1-2-8-43(A), "[o]nly the assigned administrative law judge (ALJ), or the Hearing Office Chief Administrative Law Judge (HOCALJ) acting under the delegated authority of the assigned ALJ, may sign a decision." A HOCALJ's authority to sign under delegated authority is conditioned upon the unavailability of the presiding ALJ. *See* HALLEX 1-2-8-40.

Although Plaintiff does not seriously dispute that ALJ Kenyon was in fact the acting HOALJ or that ALJ Adkins was unavailable at the time the adverse decision was signed,[5] she does dispute ALJ Adkins' compliance with the rules set forth in the procedural manual. The HALLEX manual requires specific documentation of the presiding ALJ's written authorization for the HOCALJ to sign on his or her behalf, including written statements that: (1) The presiding ALJ has read the decision and any associated order; (2) The presiding ALJ concurs with the decision as written; and (3) An affirmation that names the HOCALJ and expressly authorizes him to sign on the presiding ALJ's behalf.

---

[5]In response to the Statement of Errors, the Commissioner refers to an attached "Exhibit A" to prove that "ALJ was on extended leave when his decision was published and provided verbal authorization to acting HOCVALJ Kenyon to sign. (Doc. 10 at 4, PageID 4080). Although no exhibit was attached, the Court accepts counsel's representation as an officer of the court, and because the identity of the acting HOALJ would appear to be a matter of public record.

*See* HALLEX 1-2-8-40(B). Attached to the adverse written decision is a cover letter from ALJ Adkins stating that he has "carefully reviewed the facts of your case and made the enclosed decision," (Tr. 3021), which statements arguably comply with the first two HALLEX rules. And ALJ Kenyon's signature "on behalf of" ALJ Adkins strongly implies the latter's consent. However, the administrative record does not include an explicit affirmation naming HOCALJ Kenyon and authorizing him to sign on behalf of ALJ Adkins.

Plaintiff argues that the failure to strictly comply with HALLEX 1-2-8-40 provides grounds for remand. Plaintiff contends that the procedural violation of the HALLEX manual caused a deprivation of "a substantial right" insofar as she was entitled to a decision that reflects the judgment, findings, and conclusions of the ALJ who conducted the hearing. She asserts: "Absent the documentation called for by those rules, neither Plaintiff nor this Court can affirm that to be the case." (Doc. 9 at 12, PAGEID 4072).

The Court finds no basis for remand. Start with the nature of the procedural error – the failure to comply with a documentation rule set out in the HALLEX manual. Although the HALLEX manual provides procedural guidance for agency adjudicators, it is not legally binding. *See Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008); *see also Lockwood v. Comm'r Soc. Sec.*, 616 F.3d 1068, 1073 (9th Cir. 2010) (holding that POMS and HALLEX are internal manuals, which "do[ ] not impose judicially enforceable duties on either this court or the ALJ"); *Jeremy R.B. v. Comm'r of Soc. Sec.*, No. 2:22-cv-2452-CMV, 2023 WL 355032, at *6 (S.D. Ohio Jan. 23, 2023) ("The ALJ's failure to follow the procedure set forth in HALLEX…does not constitute reversible error because HALLEX is not binding on this Court."); *Gilliam v. Comm'r Soc. Sec.*, No. 14-cv-12335, 2015 WL 3580502 at *23 (E.D. Mich. June 5, 2015); *Estep v. Astrue*, No. 2:11-cv–0017, 2013 WL 212643 at *11 (M.D. Tenn. 2013) (collecting cases, denying similar

8

claim of failure to document basis for different ALJ signing decision "for" the ALJ who presided over hearing), R&R adopted at 2013 WL 2255852 (M.D. Tenn. May 22, 2013).

In his reply memorandum, Plaintiff presents a new argument  - that Social Security Ruling 13-2p essentially overrules *Bowie* and its progeny. SSR 13-2p, notably entitled "Evaluating Cases Involving Drug Addiction and Alcoholism," contains the following statement buried near the end of its many pages, in a section that explains how adjudicators should consider federal court decisions about Drug Addiction and Alcoholism: "We require adjudicators at all levels of administrative review to follow agency policy, as set out in the Commissioner's regulations, SSRs, Social Security Acquiescence Rulings (ARs), and other instructions, such as the Program Operations Manual System (POMS), Emergency Messages, and the Hearings, Appeals and Litigation Law manual (HALLEX)." *Id.* 2013 WL 621536, at *15 (Feb. 20, 2013). Plaintiff argues that because SSR 13-2p was published after *Bowie*, it reflects a clear statement of expression by the agency that compliance with HALLEX is just as mandatory as is compliance with the Code of Federal Regulations  Plaintiff argues that the statement reflects "the Social Security Administration's own clear interpretation of its applicable regulations." (Doc. 11 at 2, PageID 4092),

To the extent that Plaintiff's new argument is not waived,[6] this Court rejects it as unpersuasive.

> SSR 13-2p is a policy ruling clarifying how the [Administration] determines whether drug addiction is a contributing factor material to the determination of disability." *Kathleen S. v. Saul*, 2020 WL 353602, at *7 (S.D. Cal. Jan. 21, 2020) (citation and quotation marks omitted). Courts have consistently rejected [the plaintiff's] elephant-in-a-mousehole argument that SSR 13-2p established or expanded the enforceability of POMS or HALLEX in a judicial

---

[6]*See United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006) (holding that waiver applied to argument first presented in a reply brief).

proceeding. *See Jeanne E v. Saul*, 2020 WL 602279 at *6 (D. Or. Feb. 7, 2020) (collecting cases). When confronted with the tension between *Bowie* and POMS and HALLEX, this Court must give effect to the binding Sixth Circuit authority that interprets agency regulations (*Bowie*), not the agency's internal manuals (POMS and HALLEX).

*Akner v. Comm'r of Soc. Sec*., No. 18-cv-13974-SFC, 2020 WL 1445734, at *5 (E.D. Mich. March 25, 2020); *accord Cameron v. Colvin*, No. 1:15-cv-169-HSM, 2016 WL 4094884, at *2 (E.D. Tenn., Aug. 2, 2016) (rejecting similar argument, holding SSR 13-2p is inapplicable to a case not involving drug addiction or alcoholism). In short, this Court like others will continue to follow the binding authority of *Bowie*. No court – within the Sixth Circuit or outside of it – has ever found HALLEX to be binding on the courts based on the referenced statement in SSR 13-2p. And this Court is not bound by the agency's interpretation of its regulatory authority when the Sixth Circuit has made a contrary determination, as it has in *Bowie*. *See also*, *generally*, *Loper Bright Enterprises v. Raimondo*, ___ U.S. ___, 144 S. Ct. 2244 (2024) (holding that courts need not defer to an agency's interpretation of the law).

Because the procedural rules set forth in the HALLEX manual are not legally binding, the undersigned also finds no due process error. *See Lawrence v. Colvin*, No. 3:13-cv-032-DCR, 2014 WL 640990, at *3-4 (E.D. Ky. Feb. 18, 2014) (additional citations omitted). On similar facts, other courts have concluded that the lack of express written authorization for the signature of the HOCALJ does not constitute reversible error requiring remand. "Although the lack of explanation for the signature [of the different ALJ] is less than ideal, it is not reversible error warranting remand." *See id.* at *4. In any event, the referenced procedural error appears to have been harmless. It is Plaintiff's burden to show prejudice. "[N]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the

remand might lead to a different result." *Shkabari v. Gonzalez*, 427 F.3d 324, 328 (6th Cir. 2005) (internal quotation marks and citation omitted); *see also Fraley v. Comm'r of Soc. Sec.*, No. 2:18-cv-1358-JLG-KAJ, 2019 WL 5091959, at *3 (S.D. Ohio Oct. 11, 2019) (in order to grant relief for failure to comply with the HALLEX, a claimant must demonstrate prejudice), R&R adopted at 2019 WL 5799576 (S.D. Ohio Nov. 7, 2019).

### 2. Whether ALJ Adkins Complied with the Remand Order

Prior to delving into Plaintiff's second claim of error, the Court finds it necessary to briefly revisit the basis for Magistrate Judge King's remand order in Plaintiff's last successful judicial appeal. This case was remanded after Judge King agreed that the ALJ's 2020 analysis failed to "properly explain" his decision to omit a limitation to "superficial" interactions with supervisors and coworkers despite use of that term in three consulting opinions. "[I]n deciding whether the ALJ has adequately 'explained' the decision not to adopt particular phrasing from a medical opinion, this Court's review is largely constrained to whether that explanation is rational such that the Court can 'trace the path of [its] reasoning.'" *Stephen D. v. Comm'r of Soc. Sec.*, ___ F. Supp.3d ___, No. 1:21-cv-746-DRC-SKB, 2024 WL 2204735, at *10 (S.D. Ohio, May 16, 2024) (internal citation omitted).

Judge King determined that the ALJ's explanation was inadequate in large part because ALJ Adkins initially stated that "superficial" was vocationally undefined or irrelevant. The ALJ further implied that a limitation to "occasional" interaction adequately represented the "superficial" limitation. The Court found the ALJ's reasoning to be inadequate based on unpublished case law from this district that, in turn, relied on unpublished district court cases from the Seventh Circuit. The referenced authority endorses a judicially-crafted vocational definition of "superficial" as describing the "quality"

11

of workplace interactions, and holds that the meaning of "superficial" interactions in the workplace is materially different from and *inconsistent with* the vocational definition of "occasional" interactions, because the latter term refers only to the "quantity" of interaction. *See*, *e.g.*, *Hutton v. Comm'r of Soc. Sec.*, No. 2:20-cv-339-CMV-SDM, 2020 WL 4866855 (S.D. Ohio July 9, 2020), R&R adopted at 2020 WL 4334920 (S.D. Ohio July 28, 2020)). Since *Hutton*, dozens of social security cases in the Southern District of Ohio - but not all - have reversed when an ALJ describes a psychological limitation to "superficial interactions" as vocationally undefined or translates that term to "occasional interactions" in the RFC findings. Until recently, the split in authority on the issue continued to grow because there was no definitive published authority.

But after a deep dive into the pertinent case law more than a year after this Court issued the order of remand, the undersigned explained in extensive analysis why the line of unpublished case law previously cited by Magistrate Judge King in her remand order is not persuasive. *See*, *generally*, *Stephen D. v. Comm'r of Soc. Sec.*, No. 1:21-cv-746-DRC-SKB, 2023 WL 4991918 (S.D. Aug. 4, 2023) (discussing relevant case law). And U.S. District Judge Douglas R. Cole recently adopted that R&R in the only published decision on the issue in the Sixth Circuit. *See id.*, ___ F. Supp.3d, ___, 2024 WL 2204735.[7] As explained in *Stephen D.*, the undersigned finds more persuasive a line of authority that rejects the premise that "superficial" has a fixed vocational meaning in the social security context, and further rejects the premise that ALJs err when they describe the term as vocationally vague or undefined. *See Stephen D.*, 2023 WL 4991918, at *9 (explaining that the word "superficial" is not defined in vocational terms by the Social

---

[7]In his own expanded analysis of this frequently litigated issue, Judge Cole suggests the issue is one "that the Sixth Circuit ultimately will need to decide." *Stephen D.*, 2024 WL 2204735, at *6.

Security Act, its corresponding regulations, or any other guidance promulgated by the Commissioner including Social Security Rulings (SSRs), Acquiescence Rulings (ARs), the Program Operations Manual System (POMS), and the Hearings, Appeals, and Litigation Law Manual (HALLEX)); s*ee also Stephen D*., 2024 WL 2204735, at *8 (plaintiff failed to offer any evidence to show that the agency consultants understand the term superficial "to mean something different from "occasional interactions," or that they would object to swapping the latter description for the former in describing the vocational impact of a limitation on interactions.").

In short, the court now firmly rejects, as contrary to persuasive Sixth Circuit authority and as contrary to other published and unpublished decisions by the Seventh, Eighth, and Ninth Circuits, the notion that an ALJ's translation of a psychological opinion endorsing "superficial" interactions into an RFC that permits "occasional" interactions is incompatible or inconsistent with that psychological opinion. *See, e.g*., *Reeves v. Comm'r of Soc. Sec*., 618 Fed. Appx. 267, 275 (6th Cir. 2015) (finding no inconsistency between "superficial" opinion and "occasional" RFC finding, but alternatively holding that even when giving "great weight" to an opinion, "there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim" or "wholesale"); *Reynolds v. Kijakazi*, 25 F.4th 470, 473 n.1 and 474 (7th Cir. 2022) (rejecting unpublished authority defining superficial in vocational terms as without precedential value and rejecting argument that opinion that plaintiff's interactions should be "brief" required a "qualitative" limitation beyond "occasional"); *Shaibi v. Berryhill*, 883 F.3d 1102, 1106-07 (9th Cir. 2017) (finding "no obvious inconsistency" between "occasional" and "superficial contact."); *accord Lane v. O'Malley*, Case No. 23-1432, 2024 WL 302395, at *1 (8th Cir. Jan. 26, 2024) (rejecting

a "manufactured inconsistency" that "occasional interaction" is meaningfully different from psychological opinion that plaintiff could engage in "superficial interaction").

An ALJ is not required to explain every departure from a medical opinion to which he has given only "partial weight." However, SSR 96-8p states that an RFC assessment "must include" an explanation of "how any *material inconsistencies* or ambiguities in the evidence… were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7 (1996) (emphasis added). SSR 96-8p also requires ALJs to "explain why" a medical opinion was not adopted if the ALJ's RFC assessment conflicts with an opinion from a medical source. *Id.* As Judge Cole recently explained in *Stephen D.*,

> "[O]ccasionally" does not create a sufficient conflict with "superficially" when applied to "interactions," such that the ALJ would be required to explain that change. As Magistrate Judge Bowman aptly put it…,"[an] emphasis on the 'qualitative' nature of the vocationally-undefined adjective 'superficial' as if in conflict with the defined 'quantity' of interaction ... ignores the reality that time-limited 'occasional' interactions in an unskilled work setting are reasonably understood to require only surface-level interactions." …. Assuming that "occasionally" means limiting a claimant to jobs where he spends no more than one-third of his time performing work-related activities interacting with others likely also means he lacks time to interact socially on a non-superficial level.

*Stephen D.*, ___ F.Supp.3d ___, 2024 WL 2204735, at *7.[8] Stated differently,

> when a person is limited to engaging in only short and infrequent interactions, that strongly correlates, as a practical matter, with interactions that are superficial, as well. Given the correlation between the two, the ALJ's decision to use "occasional" instead of "superficial" as applied to "interactions" in calculating the mental RFC suggests that no real conflict exists. And, in turn, that means there is no "inconsistency" that the ALJ must explain.

*Id.*

---

[8] Judge Cole posits that not only is "superficial" undefined in the social security context, but that the term "occasionally" - while defined with respect to physical limitations – may have a different colloquial meaning of "from time to time" when applied to social interactions. *See id.*, (citing *Reynolds*, 25 F.4th at 474-476).

An ALJ need not explain his failure to use a specific adjective like "superficial" contained in a consultant's report when: (1) the term is rejected on grounds that it is vocationally undefined; (2) the term is not inconsistent with the RFC as determined; and (3) the ALJ found the opinion to be persuasive only in part. *Reeves*, 618 Fed. Appx. at 275; *accord Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 157, 2009 WL 2514058, at *7 (6th Cir. 2009) (citing C.F.R. §§ 404.1545(a)(3), 416.945(a)(3)); *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 Fed. Appx. 426, 436 (6th Cir. 2014) (explaining that "[a]lthough the ALJ did not describe Smith-Johnson's limitations using the exact language of those professionals, substantial evidence demonstrates that the ALJ adequately portrayed her limitations in his RFC and the hypothetical question to the VE.").

In considering Plaintiff's claim that ALJ Adkins failed to comply with the remand order, the undersigned cannot ignore the fact that the prior remand was based on unpublished case law that failed to cite to the Sixth Circuit's decision in *Reeves.* Nor can the undersigned ignore that this Court has now firmly rejected that same line of unpublished authority in a published decision. Against that backdrop, the Court turns to the merits of Plaintiff's argument that ALJ Adkins' recent decision fails to comply with this Court's directives.

Judge King held that although the ALJ was *not required* to limit Plaintiff to "superficial" interactions, the ALJ erred by failing to adequately <u>explain</u> why he did not use that term. (Tr. 3154, citing *Spinner v. Comm'r of Soc. Sec.*, No. 2:20-cv-4676-MHW, 2021 WL 7908552, at *2 (S.D. Ohio, Nov. 29, 2021) (remanding because the Court was "unable to discern from the ALJ's general discussion of [psychological] opinions whether the omission of superficial interaction from the RFC was an intentional implicit rejection of those opinions or a mere oversight.")). Again, the basis for rejecting the ALJ's

explanation was a line of unpublished case law holding that "occasional" and "superficial" are not interchangeable, and that "occasional" speaks to the "quantity of time" whereas "superficial" speaks to "the quality of the interactions." (Tr. 3154). For similar reasons, Judge King rejected ALJ Adkin's explanation that "superficial" was "vocationally irrelevant." *See Spinner*, *supra* at *2; *Hutton*, *supra*, 2020 WL 4866855.

Regardless of any reservations ALJ Adkins may have had about the Court's reliance on unpublished authority, he properly complied with the Court's instructions. On remand, the ALJ convened a new evidentiary hearing, solicited additional records and new testimony from Plaintiff, and new testimony from a vocational expert. After that hearing, ALJ Adkins found substantially greater mental limitations relating to social interactions than he had previously assessed. Whereas he chose to forego the phrase "superficial interactions" in his 2020 decision, (*see* 1621), in 2023 he explicitly adopted a new "superficial contact" limitation. He then defined that phrase in qualitative vocational terms, and added additional restrictions on interactions with the public and on teamwork or tandem tasks. Thus, he greatly expanded Plaintiff's mental limitations in his 2023 decision. (See Tr. 3032-3033).

ALJ Adkins also expanded his analysis of the relevant evidence concerning Plaintiff's social interactions. For example, at Step 2 of the sequential analysis, the ALJ wrote:

> In her 2014 function report, the claimant noted she did not go outside by herself because of panic and anxiety … However, she did not report difficulty getting along with others, though she did not attend to many social activities (Exhibit 3E/6). She reported that she had no problems with authority figures, and she has never been fired from a job because of difficulty getting along with others (Exhibit 3E/8). She reported that she went shopping in stores once or twice per week for about forty-five minutes each (Exhibit 3E/5). She spoke with others online daily, and she saw her family in person about once per month (Exhibit 3E/7). In her 2015 function report, she alleged difficulty getting along with others (Exhibit 4E/7). In a July 2015

report of contact, she noted she was able to take her children to the pool, demonstrating an ability to interact appropriately in public (Exhibit 5A/6). In March 2016, the claimant was able to go to the mall with her husband (Exhibit 13F/35). At her psychological consultative examination, the claimant stated she was not comfortable around others, did not want to talk to people, and withdrew (Exhibit 2F/6). Nonetheless, she stated she got along "great" with her supervisor in her past job, and her relationship with coworkers was "nice" (Exhibit 2F/4). She was pleasant and cooperative during the interview, though she was nervous and tearful during the evaluation (Exhibit 2F/5-6, 8). In May 2017, the claimant noted she joined a gym (Exhibit 41F/17). Most of her treatment notes reflect appropriate behavior and good eye contact (e.g. Exhibit 20F/8). She previously testified that she attended some festivals, further indicating an ability to interact appropriately in public. Thus, the record demonstrates that the claimant's ability to interact with others is no more than moderately limited.

(Tr. 3029-3030).

Later in his opinion, the ALJ evaluated Plaintiff's subjective statements, including those regarding her social interactions, and concluded that Plaintiff's statements "are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 3035).[9] The ALJ discussed multiple findings that supported his adverse assessment, including many normal mental status findings and clinical assessments noting that Plaintiff was cooperative. (See, e.g., Tr. 3046, stating that the record does not support mental symptoms or limitations as severe as Plaintiff alleges; Tr. 3048 (same); Tr. 3050 (same)). The ALJ further explained why Plaintiff's activities of daily living "do not support physical or mental symptoms as intense, persistent, or limiting as alleged." (Tr. 3050).

With respect to social interactions in particular, the ALJ pointed out inconsistencies between Plaintiff's statements that she has "discomfort with people, anger problems…and "mood swings from 'normal' to 'very irritable' with problems with her temper and easy

---

[9]Plaintiff does not challenge the ALJ's adverse assessment of her subjective complaints. That assessment both supports the ALJ's mental RFC limitations including his definition of "superficial" interaction with supervisors and coworkers, and undermines any claim of greater mental limitations.

aggravation," with other reports that "she 'got along great' with supervisors in past work while her relationship with coworkers was 'nice.'" (Tr. 3046). In addition, the ALJ pointed out that "[s]he did not report any problems with poor job performance or disciplinary actions taken against her." (*Id*.) The ALJ noted the consultative examiner's report that Plaintiff was "polite and cooperative," with adequate judgment and reasoning abilities. (*Id*.) And the ALJ reasoned:

> She spent time talking to others online daily, and she visited family about once per month (Exhibit 3E/7). She had no problems getting along with authority figures, and she has never been fired because of trouble getting along with others (Exhibit 3E/8). She took care of her animals with some help (Exhibit 3E/3). She helped supervise her teenage daughter and stepdaughter (Exhibit 3E/3).

(Tr. 3050).

The ALJ also discussed other relevant evidence. In July 2014, Plaintiff reported to the consultative examiner that she visits friends once per month. (*Id*.) In May 2017, she reported joining a gym and in July of the same year, she reported going to water aerobics twice per week and light weight training twice per week. (*Id.*). At her 2020 hearing, she reported living with her husband, daughter and grandson. (Tr. 3051). In June 2021 and again in November 2021, she reported she was primary caregiver for her two-year-old grandson. (*Id*.)

Turning next to the mental health opinions, the ALJ first discussed the opinion of consultant Dr. Karen Steiger, who offered RFC opinions on August 9, 2014 using a standard Psychiatric Review Technique Form ("PRTF"), including the opinion that Plaintiff could interact with coworkers and supervisors on a "superficial" level, but that contact with the general public should be kept to a limited basis. (Tr. 3052, citing Tr. 91). The ALJ gave only "partial weight" to her opinion, as well as to the opinions of two other agency psychologists, Drs. Edwards and Zeune who similarly opined on August 19, 2015 and

December, 2015 respectively, that Plaintiff was "capable of infrequent, superficial interactions with others and limited contact with the general public" (Tr. 3053; *see also* Tr. 121, 154).

To explain how he translated the "superficial" opinions expressed by those psychologists, ALJ Adkins reasoned that the use of the word "superficial" was "vocationally vague," and required "*additional social restrictions in the residual functional capacity for clarity*." (Tr. 3052; Tr. 3053 (emphasis added)).[10]  The ALJ then offered this rationale for the mental RFC that he determined:

> With the exception of a depressed mood, the claimant consistently presented with normal mental functioning on examination (Exhibits 1F-52F). For example, she usually presented as pleasant with appropriate behavior, good grooming and hygiene, good eye contact, and normal speech (e.g. Exhibit 41F/42). Thought processes were generally linear and logical, and there was no evidence of psychosis, hallucinations, or other abnormalities in thought content or perception (e.g. Exhibit 41F/42). Cognition was often grossly intact, and insight and judgment were generally intact (e.g. Exhibit 41F/42). Neurology notes consistently reflect intact recent and remote memory despite complaints, along with intact attention and concentration, speech and language, fund of knowledge, and insight and judgment (e.g. Exhibit 38F/5). Such findings support an ability to perform work activity within the opined limitations, though they are not consistent with a need for any extra direction with expectations. Additionally, those findings reflect that simple, routine tasks fully accommodate the claimant's mental impairments… Furthermore, activities noted throughout the record, including testimony that she attended festivals, spent the day reading and playing games, and was able to attend to some household chores, reflects that the claimant was able to at least perform work activities within the restrictions of [the consultant's] opinion, though they are also suggestive of somewhat better functioning than opined. The undersigned also notes that this opinion addresses previous mental listings as opposed to current mental listings in its use of the prior psychiatric review technique (Exhibits 1A and 2A).

---

[10]In limiting Plaintiff to "superficial interactions with others," the consultants stated that public contact should be "limited." Unsurprisingly, Plaintiff does not fault the ALJ's more restrictive translation of that particular opinion to allow <u>no</u> interaction with the general public.

(Tr. 3052)[11]; *see also* Tr. 3053 (offering nearly identical analysis of the opinions of Drs. Edwards and Zeune).

After thoroughly discussing other mental health opinions that did <u>not</u> use the term "superficial" including the opinions of the consulting examiner,[12] along with all other relevant evidence, ALJ Adkins assessed Plaintiff's specific mental RFC:

> She is limited to superficial contact with coworkers and supervisors with "superficial contact" defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as lacking the ability to engage in more complex social interactions such as persuading other people or rendering advice. She is limited to no interaction with the general public and no jobs involving teamwork or tandem tasks. She can tolerate occasional changes to a routine work setting defined as one to two per week where those changes are explained in advance and implemented gradually.

(Tr. 3032-3033).

Notwithstanding the substantially expanded mental RFC limitations and analysis, Plaintiff again urges this Court to reverse on grounds that the ALJ's reference to the term "superficial" as "vocationally vague" ignores the Court's prior rejection of his rationale that the term was "vocationally undefined." But the Court declines to reverse on this basis.

First, the undersigned respectfully rejects the line of unpublished case law on which Judge King previously relied when she reasoned that "*this Court* has held that the term 'superficial' …'is a well-defined limitation in the Social Security context.'" (Tr. 3154, internal citations omitted, emphasis added). As discussed, the undersigned previously found more persuasive a contrary view that relied on the unpublished Sixth Circuit

---

[11]The proffered explanation is more expansive than the ALJ's 2020 analysis.(*Compare* Tr. 1638-1639).
[12]The prior remand Order includes a reference to the opinion of consultative psychological examiner Dr. Bonds. (Tr. 3154). However, Dr. Bonds never restricted Plaintiff to "superficial" interactions, (see Tr. 367-374), and the remand order identifies no other error with respect to her opinions. As with the non-examining consulting psychologists who offered the "superficial" limitation, the ALJ gave only "partial weight" to Dr. Bonds' opinions. (Tr. 3054).

decision in *Reeves*. Judge Cole's published decision in *Stephen D.*, citing persuasive published and unpublished authority in the Sixth, Seventh, Eighth and Ninth Circuits, persuasively explains why "superficial" does not have a fixed vocational meaning in the social security context, and why it is not so different from "occasional" that an ALJ must explain its omission when formulating a mental RFC that limits a plaintiff to occasional interactions in unskilled work.

Second, even if the remand order is considered to be the law of *this* case, the undersigned still would not reverse. The ALJ's explanation that the term "superficial" is "vague" is not equivalent to his prior statement that the term is completely irrelevant or undefined. Ultimately, the basis for the remand order was the conclusion that the ALJ had failed to "properly explain" his decision. Beyond stating that "superficial" speaks to the "quality" of social interaction, the remand order did not further define the term. Nor would it have been appropriate to do so. "Recall, the Code of Federal Regulations (CFR) assigns the Social Security ALJ the primary obligation to assess a disability claimant's RFC." *Stephen D.*, ___ F. Supp.3d ___, 2024 WL 2204735, at *9 (citing 20 C.F.R. § 404.1546(c)).

Following remand, the ALJ honored the Court's directives by more fully explaining the basis for the mental RFC as determined. He included many new "qualitative" limitations that not only expressly incorporated the contested "superficial" restriction, but more completely defined that term by including "additional social restrictions…for clarity." (Tr. 3052; Tr. 3053). Plaintiff's complaint that the ALJ erred by "narrowing" the definition of superficial contact is unpersuasive. (Doc. 9 at 13, PageID 4073). Even under the unpublished line of authority on which the remand was based, courts would affirm when an ALJ translated "superficial" into "qualitative" vocational terms that the ALJ found to

better represent the plaintiff's RFC limitations. *See*, *e.g.*, *Latisha D. B. v. Comm'r of Soc. Sec.*, No. 2:22-cv-3875-SDM-KLL, 2023 WL 4727000, at \*4-5 (S.D. Ohio July 25, 2023), R&R adopted 2023 WL 5531611 (S.D. Ohio Aug. 28, 2023)  (holding that no tandem tasks and no customer service responsibilities was a reasonable vocational translation of the phrase "superficial interaction").

In any event, Judge King's remand order expressly acknowledges that the "ALJ is not required to adopt" the opinions that limit Plaintiff "to only superficial interaction with supervisors and coworkers" so long as he provides sufficient explanation for the Court to follow his reasoning. (Tr. 3154). "[T]he ALJ is imbued with discretion when formulating the RFC and need not use the exact language of various medical opinions in the record when describing a claimant's abilities." *Stephen D*, 2024 WL 2204735, at \*9 (citing *Reeves*, 618 Fed. Appx. at 275, additional citation omitted). "Because the ALJ's description of a claimant's RFC is a finding of fact… and because such findings are "conclusive" unless unsupported by substantial evidence, …[the plaintiff] must show that the ALJ's explanation is *wrong* (such that it could not be supported by substantial evidence) rather than simply *different* from the medical opinion." *Id*., 2024 WL 2204735, at \*10 (internal citations omitted).

> So long as the ALJ's explanation shows that he has evaluated the various medical opinions in conformance with the standardized criteria found in the regulations, *see* 20 C.F.R. § 404.1520c(c) (requiring ALJ to consider a medical opinion's methodological supportability based on underlying data, the opinion's consistency with other medical findings, and the specialization of the physician), any further court review for substance is very constrained. Stated alternatively, if the ALJ has undertaken a procedurally proper review of the medical records in formulating the RFC and the challenge is to the substance of the ALJ's formulation after that procedurally proper review, the bar for any such challenge is high, and it is the claimant's burden to meet it.

*Id*., 2024 WL 2204735, at \*10 (additional citations omitted).

22

Here, the ALJ's expanded articulation of his reasoning and additional mental RFC limitations, including but not limited to his vocationally relevant translation of "superficial" contact, fully complies with the remand order. In his more recent opinion, ALJ Adkins carefully explained why he afforded only "partial weight" to three non-examining psychological PRTF opinions that used the phrase "superficial interactions." In the course of evaluating those opinions, the ALJ accurately summarized the information on which they relied at the time of their review in 2014 and 2015, and considered them in the context of the record as a whole including the opinions of other medical and non-medical sources, the information that Plaintiff herself provided relevant to her social interactions, and more recent evidence. That expanded analysis is more than adequate for this Court to follow the ALJ's reasoning and determine that the mental RFC as determined in the Commissioner's most recent decision is substantially supported. *Accord Stephen D*., 2024 WL 2204735, at *10; *Accord*, *Anissa H. v. Comm'r of Soc. Sec.*, No. 2:21-cv-5315-JLG-KLL, 2023 WL 1857822, at *9 (S.D. Ohio, Feb. 9, 2023) (holding in second appeal after remand of *Hutton* that ALJ did not continue to err by rejecting "superficial" in the RFC on grounds it was not vocationally relevant, citing to *Reeves* and the lack of regulatory definition in the DOT or similar regulatory resources, and because the ALJ clearly explained how he considered limitations in both the "quality" and "quantity" of Plaintiff's workplace interactions), R&R adopted 2023 WL 2692415 (S.D. Ohio March 29, 2023);[13] *see also Richard S. v. Comm'r of Soc. Sec.,* No.  2:22-cv-2176-EAS-KLL, 2023 WL 2805347, at *14 (S.D. Ohio, April 6, 2023) (citing *Reeves* and discussing disagreement in case law regarding "superficial," affirming because ALJ adequately defined the phrase

---

[13]In *Anissa H*., the Court again remanded based on a different error related to ALJ's failure to consider VA's disability determination.

in the RFC and "nitpick[ing] the ALJ's definition of 'superficial'" risks "invading the zone of choice within which the Commissioner operates") (additional citation omitted), R&R adopted 2023 WL 6318135 (S.D. Ohio September 28, 2023); *Andrea B. v. Comm'r of Soc. Sec.*, No. 3:22-cv-055-KAJ, 2023 WL 128288, at *7 (S.D. Ohio, Jan. 9, 2023) (affirming because "no regulation from the Social Security Administration requires an ALJ to analyze superficial interactions a specific way" and the "heart of the case law" emphasizes adequate explanation, "not the need…to include buzz words like 'superficial interactions' in order to avoid remand.").

### 3. Whether Prior Vocational Expert Testimony Requires Remand

In her final claim, Plaintiff argues that this Court must remand based on vocational expert testimony at the 2017 hearing that an inability "to respond appropriately to instructions and accept supervisor criticism" would be "important" for "all employees." In a follow-up question, the VE testified that "supervisor criticism" would not be "classif[ied]" as "superficial." (Tr. 3154, quoting Tr. 75). Plaintiff now argues that ALJ Adkins "ignored" that 2017 testimony because in the 2022 decision, the ALJ appears to rely on only the most recent vocational expert testimony.

The Court finds no error. The 2017 VE testimony was of little if any relevance to the ALJ's most recent decision. Instead, the 2017 VE testimony was solicited by counsel after ALJ Sanders asked the VE to assume a hypothetical mental RFC that was much less limited than the limitations that ALJ Adkins determined in 2022.[14] In addition, the 2017 VE's testimony was expressed as a general opinion that the ability to respond to

---

[14]In the first decision (later remanded by agreement of the parties), ALJ Deborah Sanders limited Plaintiff to "simple, routine, repetitive tasks, but not at a production rate pace," and "to occasional interaction with coworkers and supervisors," without "interaction with the public." (Tr. 23).

instructions and accept supervisor criticism is "*important*" for all employees in the workplace. Plaintiff's characterization of that testimony as standing for the proposition that *any* limitation in those areas is *work-preclusive* is untenable. Even more critically, the VE in 2017 was not provided with a definition of "superficial" either by the ALJ or counsel, nor was she asked for her own definition of what she understood that term to mean. Again, the term is not vocationally defined in the DOT or by other regulatory authority. And at the time of her testimony in 2017, there was no universally agreed upon "definition" in any published authority binding on this Court.[15]

At the 2020 hearing, Plaintiff's counsel elicited similar testimony. After the VE confirmed that "it's important that the hypothetical employee be able to accept instructions and supervisor criticism in an appropriate manner," counsel obtained her testimony that if the employee is wholly "<u>unable</u>" to "accept instructions and supervisor criticism in an appropriate manner," then "that would ultimately result in their termination…." (Tr. 1692). At the 2022 hearing, the VE also testified in response to counsel's questions that the inability "to appropriately perform *any*" of the "activities …included in the [ALJ's] definition of superficial" would be work-preclusive. (Tr. 3091, emphasis added).

There has never been a legal requirement for an ALJ to discuss every piece of evidence in an administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation omitted). Here, the ALJ was not required to discuss either the irrelevant 2017 VE

---

[15]The undersigned also finds the VE's "no" response to the query "Would you classify supervisor criticism as superficial?" to be ambiguous. (Tr. 75). Whatever might be meant by "superficial," the awkward wording suggests that it is the *supervisor*'s qualitative ability to communicate written or oral criticism that falls outside that realm.

testimony, or any other VE testimony from the 2020 or 2023 hearings about hypothetical limitations that the ALJ did not adopt.  It is evident from the decision that ALJ Adkins appropriately relied instead on VE testimony at the third and final hearing that was based on the mental RFC as actually determined.  That mental RFC was substantially supported by the record as a whole, including the relevant VE's testimony.

### III. Conclusion and Recommendation

This Court must affirm even if an alternative RFC would have been substantially supported, so long as the RFC limitations as determined were within the "zone of choice." The ALJ's analysis here falls well within that zone. Because the Commissioner's decision reflects no legal error and is supported by substantial evidence, **IT IS HEREBY ORDERED THAT** the decision be **AFFIRMED** and that this case be **CLOSED**.


 *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge